IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ARTHUR C. WAGNER, JR., ) <br> Individually, and ) <br> ARTHUR C. WAGNER, JR., ) <br> for the benefit of, ) <br> JEAN MARIE WAGNER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SFX MOTOR SPORTS, INC., et al., ) <br> ) <br> Defendants. ) <br> _____) | CIVIL ACTION <br><br> No. 05-2336-KHV |

## MEMORANDUM AND ORDER

Arthur C. Wagner, Jr., individually and on behalf of his wife, Jean Marie Wagner, brings suit against SFX Motor Sports, Inc. d/b/a Clear Channel Entertainment-Motor Sports, SFX Entertainment, Inc. d/b/a Clear Channel Entertainment, Clear Channel Communications, Inc., Jayhawk Racing Properties, L.L.C., and Heartland Park Raceway, L.L.C. Plaintiff alleges ordinary negligence, wanton conduct and loss of consortium arising out of injuries which he sustained while competing in a motorcycle race on August 8, 2003. This matter comes before the Court on Defendants' Motion For Summary Judgment (Doc. #54) filed July 17, 2006. For reasons set forth below, the Court sustains defendants' motion in part.

## Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the nonmoving party must demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated §., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on its pleadings but must set forth specific facts in opposition of the motion. Applied Genetics, 912 F.2d at 1241.

The Court must view the record in the light most favorable to the party opposing the motion for summary judgment. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

**Factual Background**

The following facts are uncontroverted, deemed admitted or, where disputed, viewed in a light most favorable to plaintiff.

On August 8, 2003, Arthur Wagner wrecked his motorcycle while competing in the Formula USA 250K Team Challenge Endurance Race at Heartland Park Topeka racetrack in Topeka, Kansas. The City of Topeka owned the racetrack, but it had assigned the right to operate the racetrack to Jayhawk Racing Properties, L.L.C. ("Jayhawk").[1] Jayhawk in turn had assigned its right to operate the racetrack to Heartland Park Raceway, L.L.C. ("Heartland").[2]

On March 1, 2003, Heartland entered into a track rental agreement with SFX Motor Sports, Inc. d/b/a Clear Channel Entertainment-Motor Sports ("SFX Motor Sports").[3] In the agreement, Heartland authorized SFX Motor Sports to stage Formula USA Series and Championship Cup Series ("CCS") motorcycle races at the racetrack from August 8 through 10, 2003. The track rental agreement provided in pertinent part as follows:

> This contract is entered into as of the 1st day of March, 2003 by and among HEARTLAND PARK RACEWAY, LLC, a Kansas limited liability company (hereinafter referred to as "HPT" or "Lessor"), and [SFX Motor Sports, Inc. d/b/a Clear Channel Entertainment - Motor Sports] (hereinafter referred to as "Lessee").
> \* \* \*

---

[1] The record does not contain the agreement between the City and Jayhawk, but plaintiff admits that the City made such an assignment.

[2] The record does not contain the agreement between Jayhawk and Heartland, but plaintiff admits that Jayhawk made such an assignment.

[3] SFX Entertainment, Inc. d/b/a Clear Channel Entertainment ("SFX Entertainment") and Clear Channel Communications, Inc. ("Clear Channel") are affiliates of SFX Motor Sports, but they had no involvement with respect to the Formula USA or CCS events which occurred at the racetrack in August of 2003.

    1.    HPT will make available to Lessee specific areas of the premises commonly known as Heartland Park Topeka . . ., consisting primarily of a drag strip, road racing course, dirt track, off-road facilities and ancillary buildings, for the purpose indicated on Exhibit A (the "Event").

\* \* \*

    11.    HPT requires that there be a minimum of one (1) licensed and staffed Paramedic Ambulance on the Premises during all events. The cost of [two] staffed Paramedic Ambulance[s] [on duty from 8:00 AM until 6:00 PM, each day] shall be included in the Track Rental.

    12.    HPT will furnish the following equipment for use of Lessee: Fire Extinguishers: 10 and 20 lbs. charged; Oil Dry; Shovels; Brooms; and Water Jugs. In addition, one (1) wrecker, one flatbed truck and one (1) fire truck are also available for use.

    13.    HPT will provide a marked location for all corner workers who must remain within the marked areas, except as may be specifically required to perform their duties.

\* \* \*

    20.    Lessee warrants and represents that all racing or on-track activities shall be conducted in accordance with the rules and regulations of the governing sanctioning body in effect as of the date of the Event. Lessee shall be responsible for enforcing . . . all rules and regulations. Lessee shall also be responsible for the conduct of all workers, officials, spectators, guests or other parties on the Premises during the terms of this Agreement, as well as the safe conduct of the Events. Lessee shall establish a minimum level of staffing necessary for the conduct of on-track activities and shall inform HPT of the minimum. Lessee shall not conduct any on-track activities unless the minimum requirement is met. If HPT determines, in its sole discretion, that inadequate staffing is in place, HPT may place additional workers on location at the expense of Lessee. <u>HPT MAKES ABSOLUTELY NO WARRANTIES, EITHER EXPRESSED OR IMPLIED</u> concerning the safety of any persons or property as a result of complying with the requirements of this Agreement. Lessee acknowledges that motor sports activities are hazardous and participation can lead to serious or fatal injury; the hazards of motor sports are known to its members; and its members, participants, their crews and guests have assumed the risk of any injury by choosing to participate and attend the event at the Premises.

Exhibit N to <u>Defendant's Memorandum In Support Of Motion For Summary Judgment</u> ("<u>Defendant's Memorandum</u>") (Doc. #55) filed July 17, 2006.

Some time in 2003, before the races in August, Heartland entered into an oral agreement with Great American Management ("GAM") by which it delegated some duties to GAM, including opening the gates of

4

the racetrack, preparing the bathrooms, ensuring that the public address system worked and providing water.

Before the race on August 8, plaintiff signed a release and waiver of liability. The waiver provided in pertinent part as follows:

> IN CONSIDERATION (a) of being permitted to compete . . . EACH OF THE UNDERSIGNED, for himself/herself, his/her personal representatives, parent or legal guardian, heirs, and next of kin:
>
> * * *
>
> 2. HEREBY RELEASE, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE SFX Motor Sports, Inc., d/b/a Clear Channel Entertainment-Motor Sports, and its affiliates and related companies including specifically SFX Entertainment, Inc., d/b/a Clear Channel Entertainment, Clear Channel Communications, [I]nc., . . . track operators, . . . owners and lessees of premises used to conduct the Event(s), . . . all for the purposes herein referred to as "Releasees", FROM ALL LIABILITY TO THE UNDERSIGNED, his personal representatives, parent or legal guardian, assigns, heirs, and the next of kin FOR ANY AND ALL LOSS OR DAMAGE, AND ANY CLAIM OR DEMANDS THEREFORE ON ACCOUNT OF INJURY TO THE PERSON OR PROPERTY, OR RESULTING IN DEATH, OF THE UNDERSIGNED ARISING OUT OF OR RELATED TO THE EVENT(S), WHETHER CAUSED, IN WHOLE OR IN PART, BY THE SOLE OR CONCURRENT NEGLIGENCE OR WRONGDOING, STRICT LIABILITY OR FAULT OF THE RELEASEES OR OTHERWISE.

Exhibit J to <u>Defendants' Memorandum</u> at 14.[4]

During the race, plaintiff's motorcycle entered corner 10 of the racetrack at a speed of 100 to 130 miles per hour, and began to slide. The motorcycle hit a speed bump, and plaintiff and the motorcycle slid across the grass and dirt on the outside of corner 10 (the "run-off" area) into an unprotected concrete barrier approximately 25 to 50 feet away. The collision ignited a fire which engulfed both plaintiff and the motorcycle, and plaintiff suffered severe injuries.

---

[4] The waiver does not specifically identify Jayhawk and Heartland, but the terms "track operators" and "owners and lessees of premises used to conduct the Event(s)" are sufficient to encompass these defendants.

Before the race, Keith Abbott and Kevin Elliot, who worked for SFX Motor Sports, made a few trips around the racetrack to identify primary target zones of impact. Gordon Spieckerman, another employee of SFX Motor Sports, rode his motorcycle around the racetrack to inspect the track condition and corners. The day before plaintiff's accident, at least three motorcycles ran off the racetrack at corner 10 at slower than competition speed. Before the race, track operators placed tires in front of the section of the concrete barrier around corner 10 which William Ritger, a part-time employee of SFX Motor Sports, considered to be the "big impact zone" of that corner. Exhibit F to Defendant's Memorandum at 64. Track operators placed no tires or other safety devices in front of the rest of the concrete barrier surrounding corner 10, so about 70 feet of the barrier lacked additional protection. Plaintiff's accident occurred in an area of corner 10 with an unprotected concrete barrier.

During the race, track operators placed corner workers in stations along the racetrack. The corner workers acted as flaggers to inform the racers to proceed with caution or stop altogether in the event of an accident. They also served as emergency responders by helping downed racers if necessary. The track rental agreement stated that Heartland would provide marked locations for the corner workers. At each corner station, Heartland placed two fire extinguishers and a radio to communicate with the control tower. Although Heartland hired some of the corner workers through a temporary employment agency, SFX assumed primary responsibility for hiring and training corner workers.

On August 8, with Spieckerman's help, Ritger placed corner workers around the track. Ritger assigned two corner workers, Randy and Linda Bodtke, to corner 10. No defendant asked the Bodtkes if they had prior experience as corner workers, and Randy Bodtke had no prior experience. Linda Bodtke was receiving social security disability relating to her back condition and asthma, and she had only served as a

6

corner worker some 20 years earlier at a circular dirt track. Ritger stationed both Bodtkes on the inside of the corner, and no corner workers were on the outside of corner 10. After plaintiff crashed on the outside of corner 10, oncoming racers delayed Randy Bodtke in reaching plaintiff.

Corner workers received instruction from track operators on using flags to communicate with racers during the race. Track operators instructed corner workers that they could not use a red flag to stop a race without authorization from the control tower. On August 8, when Linda Bodtke sought to stop the race for plaintiff's accident, this authorization was delayed. Also, Linda Bodtke had been instructed to hold the red flag still as she displayed it to the racers. Typical pre-race training instructed corner workers to waive the red flag aggressively in such a situation. The corner workers received no instruction or training on proper use of fire extinguishers in case a rider caught on fire. No corner worker ever attempted to help plaintiff. The fire that engulfed him and his motorcycle burned until it ran out of fuel.

On the day of the race, Heartland provided two staffed ambulances pursuant to the track rental agreement. The first ambulance arrived approximately five minutes after the accident, but the emergency personnel in that ambulance did not attempt to help plaintiff. It was not until the second ambulance arrived, approximately 12 minutes after the accident, that any emergency personnel began to render aid. The record contains no evidence that Heartland or SFX Motor Sports used the wrecker, flatbed truck or fire truck to respond to the crash site.

## **Analysis**

Plaintiff claims that defendants acted with negligence and wantonness in disregarding the danger of the unprotected concrete wall and failing to provide adequate emergency response to the crash. Plaintiff seeks damages for his loss and loss of consortium on behalf of his wife. Defendants seek summary judgment on all

claims, arguing that as a matter of law (1) Jayhawk, Heartland, SFX Entertainment and Clear Channel owed no duty of care to plaintiff; (2) any duty of care that existed was properly discharged; and (3) plaintiff's loss of consortium claim cannot be maintained without an underlying cause of action.

**I.     Duty**

To establish negligence under Kansas law, plaintiff must prove (1) the existence of a duty, (2) defendants' breach of that duty, (3) injury and (4) causation between the breach and the injury. South v. McCarter, 280 Kan. 85, 94, 119 P.3d 1, 8 (2005). A claim of wanton conduct also requires defendants' breach of an applicable duty. See Elliot v. Peters, 163 Kan. 631, 636, 185 P.2d 139, 144 (1947). Jayhawk, Heartland, SFX Entertainment and Clear Channel argue that they did not owe a duty of care to plaintiff.[5] The existence of a duty under Kansas law is grounded in foreseeability; "[a]n injury is foreseeable so as to give rise to a duty of care where a defendant knows or reasonably should know that an action or the failure to act will likely result in harm." Gragg v. Wichita State Univ., 261 Kan. 1037, 1056, 934 P.2d 121, 135 (1997). Although the existence of a duty is ultimately a question of law, see Miller v. Dillard's, Inc., 166 F. Supp.2d 1326, 1331 (D. Kan. 2001), foreseeability is a fact-driven inquiry to be decided by the jury, see Gardin v. Emporia Hotels, Inc., 31 Kan. App.2d 168, 175, 61 P.3d 732, 738 (2003). The Court may determine foreseeability as a matter of law only where the record contains no evidence that the cause of plaintiff's injuries

---

[5]     SFX Motor Sports does not dispute that it owed a duty to plaintiff. From the record, it appears that SFX Motor Sports owed plaintiff a duty to ensure safe racing conditions and to employ only competent workers. See Wolfgang v. Mid-Am. Motorsports, Inc., 111 F.3d 1515, 1524 (10th Cir. 1997) (duty of care evidenced by responsibility for safety measures); Plains Res., Inc. v. Gable, 235 Kan. 580, 591, 682 P.2d 653, 662 (1984) (employer has duty to hire and retain competent employees); McDonnell v. Music Stand, Inc., 20 Kan. App.2d 287, 293, 886 P.2d 895, 900 (1995) (employer has duty to hire competent independent contractors where safety at risk). These duties closely resemble the duties which Heartland owed to plaintiff, explained below.

8

was foreseeable. Id.

### A. Duty Owed By Jayhawk

Jayhawk acquired from the City of Topeka the right to operate Heartland Park Topeka racetrack for public entertainment. As the general concessionaire, Jayhawk retained a duty to exercise reasonable and ordinary care for the safety of the premises unless it divested itself of all responsibility for operation of the facility. See Griffin v. Rogers, 232 Kan. 168, 179, 653 P.2d 463, 471-72 (1982). Before August of 2003, Jayhawk assigned its right of operation to Heartland, which leased the track to SFX Motor Sports for motorcycle races on August 8 through 10, 2003. Plaintiff admits that this assignment divested Jayhawk of all supervisory control over the motorcycle races held at the racetrack during that period. The record contains no evidence that Jayhawk was involved in the race. The Court therefore finds that Jayhawk owed no duty to plaintiff. Defendants' motion for summary judgment as to plaintiff's negligence claim against Jayhawk is sustained.

### B. Duty Owed By Heartland

Through its agreement with Jayhawk, Heartland assumed control of the operation of the racetrack. Heartland then entered into agreements with both SFX Motorsports and GAM to conduct certain aspects of the races on August 8 through 10. Heartland argues that these agreements relieved it of its duty to plaintiff. The Court disagrees.

#### i. Heartland's Agreement With SFX Motorsports

Heartland entered into a written lease agreement with SFX Motor Sports which allowed SFX Motor Sports to stage motorcycle races at the facility from August 8 through 10, 2003. In the track rental agreement, however, Heartland retained significant supervisory authority. Under the agreement, Heartland

9

retained the right to mark the location of all corner workers. Heartland also provided two staffed ambulances during the days of the races, as well as fire extinguishers, a wrecker, a flatbed truck and a fire truck. Heartland also retained discretion to place extra workers around the track if it determined that additional workers were needed. Such contractual terms may be sufficient to establish a duty of care by Heartland. See Wolfgang v. Mid-Am. Motorsports, Inc., 111 F.3d 1515, 1524 (10th Cir. 1997) (duty to third party beneficiaries may be created by contractual terms intended to secure safety of third parties). Given the inherent danger of motorcycle racing and the nature of Heartland's obligation to secure the safety of racers, Heartland is not entitled to summary judgment on the theory that plaintiff's injuries were unforeseeable and Heartland had no duty of care to prevent them.

Although SFX Motor Sports assumed primary responsibility for hiring and training corner workers, the record indicates that Heartland was also involved in employment matters. Specifically, Heartland hired the two corner workers stationed at corner 10 on the day of the accident and the emergency personnel responsible for operating the on-site ambulances. Defendants argue that these persons were independent contractors and that the defendants cannot be held liable for the negligence of such persons. Plaintiff does not address whether the corner workers and emergency personnel are employees or independent contractors. This distinction is normally a question of fact for the jury. McCubbin v. Walker, 256 Kan. 276, 281, 886 P.2d 790, 795 (1994). Such distinction, however, is irrelevant here. Plaintiff's claim is rooted in the direct negligence of Heartland and SFX Motor Sports in hiring incompetent workers; it is not premised on a theory of vicarious liability. Under Kansas law, an employer has a duty to "hire and retain only safe and competent employees," Plains Res., Inc. v. Gable, 235 Kan. 580, 591, 682 P.2d 653, 662 (1984), and a duty to "employ a competent and careful contractor . . . to do work which will involve a risk of physical harm unless it is skillfully and carefully done,"

10

McDonnell v. Music Stand, Inc., 20 Kan. App.2d 287, 293, 886 P.2d 895, 900 (1995) (adopting Restatement (Second) of Torts § 411). The work of the corner workers and the emergency personnel clearly involved a risk of physical harm to race participants if the work was not performed correctly. The evidence reveals a genuine issue of material fact whether Heartland's hiring of inadequate corner workers and emergency personnel created a foreseeable risk of harm, and Heartland is not entitled to summary judgment on the theory that it had no duty of care under Gable and McDonnell. Heartland is not entitled to summary judgment on the ground that its agreement with SFX Motor Sports relieved it of its duty.

### ii. Heartland's Agreement With GAM

Heartland also entered into an oral agreement with GAM by which Heartland delegated to GAM some of its duties under its contract with SFX Motor Sports. Specifically, GAM agreed to open the gates of the facility, prepare the bathrooms, ensure that the public address system was operational and provide water jugs during the motorcycle races. Without complete assignment of operation responsibilities, Heartland's delegation of duties to GAM through oral agreement does not insulate Heartland from an otherwise applicable duty of care. See §. Benefit Life Ins. Co. v. Fed. Deposit Ins. Corp., 804 F. Supp. 217, 225 (D. Kan. 1992) (delegation of contractual duties to another does not discharge duty or liability of original obligor without agreement to that effect). Heartland is not entitled to summary judgment on the ground that its oral agreement with GAM relieved it of its duty.

### C. Duty Owed By SFX Entertainment And Clear Channel

Although SFX Entertainment and Clear Channel were not involved in the races, plaintiff argues that they assumed a duty because they were named in the waiver which he signed. Plaintiff cites no authority for the counter-intuitive proposition that, for purposes of tort law, plaintiff creates a duty by exercising a waiver which

relieves a party of liability for ordinary negligence. The record contains no evidence from which a jury might find that SFX Entertainment and Clear Channel owed any duty to plaintiff. SFX Entertainment and Clear Channel are therefore entitled to summary judgment on plaintiff's claims.

**II.     Negligence**

Heartland and SFX Motor Sports argue that they are immune from liability for ordinary negligence because of plaintiff's waiver.[6] Plaintiff does not respond to this argument.

Under Kansas law, the intention to waive liability for negligence must be expressed in clear and unequivocal language. Belger Cartage Serv., Inc. v. Holland Constr. Co., 224 Kan. 320, 329, 582 P.2d 1111, 1119 (1978). Here, the exculpatory language is capitalized so as to stand out from the rest of the text; the waiver is clear and unequivocal in limiting defendants' liability for ordinary negligence. Indeed, substantially similar language has been upheld against claims of ordinary negligence in the context of automobile racing. See Wolfgang v. Mid-Am. Motorsports, Inc., 898 F. Supp. 783, 788-90 (D. Kan. 1995), aff'd, 111 F.3d 1515 (10th Cir. 1997). Because the waiver clearly and unequivocally bars plaintiff's claims of ordinary negligence, Heartland and SFX Motor Sports are entitled to summary judgment on those claims.

**III.    Wanton Conduct**

Plaintiff argues that Heartland and SFX Motor Sports acted with wanton disregard of the known and obvious risk of harm at corner 10.[7] Wanton conduct would be actionable because it falls outside the scope of plaintiff's waiver. See Wolfgang, 898 F. Supp. at 788 (under Kansas common law, attempt to waive liability

---

[6]     Because the Court has determined that Jayhawk, SFX Entertainment and Clear Channel owed no duty to plaintiff, it only considers plaintiff's negligence claims against Heartland and SFX Motor Sports.

[7]     Because the Court has determined that Jayhawk, SFX Entertainment and Clear Channel owed no duty to plaintiff, the Court only considers plaintiff's wanton conduct claims against Heartland and SFX Motor Sports.

for wanton conduct unenforceable). Heartland and SFX Motor Sports argue that their conduct was not wanton because (1) they did not consider corner 10 to be dangerous, (2) they took sufficient measures to prevent injury and render aid to plaintiff, (3) they experienced no communication difficulties on the day of plaintiff's accident, and (4) the corner workers were adequately trained and equipped.

Kansas does not recognize degrees of negligence, but draws a distinction between ordinary negligence and wanton conduct. Danisco Ingredients USA, Inc. v. Kansas City Power & Light Co., 267 Kan. 760, 772, 986 P.2d 377, 385 (1999). Wanton conduct is a product of defendants' mental attitude, not of particular negligent acts. Robison v. Kansas, 30 Kan. App.2d 476, 479, 43 P.3d 821, 824 (2002). To establish wanton conduct under Kansas law, plaintiff must show defendants' realization of the imminence of danger and reckless disregard, complete indifference or lack of concern for the probable consequences of the wrongful act. Id. (citing Boaldin v. Univ. of Kan., 242 Kan. 288, 293, 747 P.2d 811, 814 (1987)).

Plaintiff may establish defendants' realization of an imminent danger with circumstantial evidence that (1) defendants had reason to believe that such a danger existed or (2) defendants disregarded a known or obvious risk from which harm was highly likely to occur. Lanning v. Anderson, 22 Kan. App.2d 474, 482, 921 P.2d 813, 819-20 (1996). Such evidence may be used to form a legitimate inference as to the requisite knowledge of defendants. Id.

Defendants' reckless disregard or complete indifference need not include an intent to injure. Reeves v. Carlson, 266 Kan. 310, 314, 969 P.2d 252, 256 (1998). Since reckless disregard and indifference are characterized by failure to act when action is called for to prevent injury, acts of omission as well as acts of commission can be wanton. Gould v. Taco Bell, 239 Kan. 564, 572, 722 P.2d 511, 518 (1986). Preventative measures will preclude a finding of wantonness only where those measures "materially lessen the chances of

13

the injury suffered by the plaintiff." Wolfgang, 111 F.3d at 1523.

The determination that conduct is wanton is normally a question of fact for the jury. Gruhin v. City of Overland Park, 17 Kan. App.2d 388, 392, 836 P.2d 1222, 1225 (1992). "Only when reasonable persons could not reach differing conclusions from the same evidence may the issue [of wantonness] be decided as a question of law." Id. Here, the parties do not attribute specific knowledge or action to particular defendants. Because they refer only to defendants collectively, and much of the conduct of Heartland and SFX Motor Sports is intertwined, the Court cannot separately evaluate their conduct and intent. The Court therefore evaluates as a whole the conduct of Heartland and SFX Motor Sports.

While defendants admit that crashes are an inherent danger in motorcycle racing and that such crashes involve the risk of serious injury or death, they argue that they did not know of the imminence of danger in this case. The track rental agreement, the waiver and the placement of ambulances, a fire truck, fire extinguishers, radios and emergency personnel suggest that the defendants knew of these risks before plaintiff's accident. Indeed, the track rental agreement stated "motor sports activities are hazardous and participation can lead to serious or fatal injury." Exhibit N to Defendants' Memorandum at 8. This general knowledge is sufficient to support a finding that defendants had reason to know about the existence of imminent danger. See Wolfgang, 898 F. Supp. at 791. Further, at least three motorcycles ran off the racetrack at corner 10 the day before plaintiff's accident while running much slower than competition speed. The record also contains evidence that on the day of the accident, during pre-race practice, at least one more motorcycle ran off the racetrack at corner 10 while traveling slower than competition speed. Because such incidents would involve a much greater risk of harm when occurring at the higher speeds of competition, a reasonable jury could infer that the danger

of corner 10 was obvious to defendants.[8]  See Lanning, 22 Kan. App.2d at 482, 921 P.2d at 820 (knowledge may be legitimately inferred from circumstantial evidence).  This evidence creates a genuine issue of material fact whether defendants had a realization of imminent danger sufficient to find wanton conduct.  Id.

Defendants also argue that as a matter of law they did not act wantonly because they materially lessened plaintiff's risk of harm by (1) stationing two corner workers at corner 10, (2) holding training meetings with corner workers the morning and afternoon of each race day, (3) equipping corner 10 with two fire extinguishers and a radio, (4) providing two staffed ambulances and a fire truck, (5) calling for a helicopter and (6) protecting the "impact zone" of the concrete barrier around corner 10 with additional safety measures.  In evaluating defendants' preventative measures, the question is whether a reasonable jury could come to only one conclusion based on the facts and circumstances of the case: that defendants' actions materially lessened the risk of plaintiff being injured in his accident and the rescue operation that followed.  See Wolfgang, 111 F.3d at 1523.  A "token effort" at preventing injury will not overcome a mental attitude of reckless disregard.  Friesen v. Chicago, Rock Island & Pac. R.R., 215 Kan. 316, 323, 524 P.2d 1141, 1148 (1974).

Of the two corner workers stationed at corner 10, one had no prior experience and the other was disabled and had only worked as a corner worker on a circular dirt track (not a road course) some 20 years earlier.  Heartland hired both corner workers through a temporary employment service, and did not question either corner worker about prior experience.  Ritger positioned both corner workers by themselves on the

---

[8]  Because the track rental agreement was operative only from August 8 through 10, 2003, the record is not clear whether SFX Motor Sports had knowledge of the three run-offs which occurred on August 7, 2003.  Viewing the evidence in the light most favorable to plaintiff, however, a reasonable jury could find that Heartland, as operator and lessor of the racetrack on all pertinent days, knew of the run-offs on both August 7 and 8, 2003.  A reasonable jury could also find that SFX Motor Sports knew of the run-off on August 8, 2003.

15

inside of corner 10, which prevented them from timely reaching plaintiff, who had crashed on the outside of the track. Also, the track operators' delay in giving Linda Bodtke authorization to waive her red flag and stop the other racers prevented Randy Bodtke from quickly making his way across the track to help plaintiff. Viewing the evidence in a light most favorable to plaintiff, the corner workers were ill-prepared to help plaintiff once they arrived at the crash site; they had not received training on use of a fire extinguisher and no one tried to extinguish the flames which engulfed plaintiff.

The first ambulance arrived approximately five minutes after the accident, but the emergency personnel did not attempt to help plaintiff. It was not until the second ambulance arrived, approximately 12 minutes after the accident, that any emergency personnel began to render aid. The record contains no evidence that the fire truck ever responded to the crash site. Viewing the evidence in a light most favorable to plaintiff, a reasonable jury could find that in a situation involving obvious danger, defendants hired and relied upon unskilled, temporary workers. This evidence of reckless disregard makes summary judgment on a claim of wanton conduct improper. See Louderback v. Orkin Exterminating Co., 26 F. Supp.2d 1298, 1310 (D. Kan. 1998).

The Court cannot conclude as a matter of law that calling a helicopter or trying to protect the "impact zone" of corner 10 absolves defendants of liability for wanton conduct. Viewing the evidence in a light most favorable to plaintiff, defendants' overall actions exacerbated plaintiff's injuries, and a reasonable jury could find that defendants recklessly disregarded an obvious risk of imminent harm by completely failing to provide additional safety measures in a lesser impact zone of corner 10 and by failing to hire or train competent corner workers and emergency personnel.

A reasonable jury could conclude that defendants' conduct was wanton, and defendants' motion for summary judgment on this issue must therefore be overruled.

### IV. Loss Of Consortium

Defendants argue that they are entitled to summary judgment on plaintiff's loss of consortium claim because such claim is derivative of plaintiff's underlying claims of negligence and wantonness. See McGuire v. Sifers, 235 Kan. 368, 385, 681 P.2d 1025, 1038 (1984) (loss of consortium claim vests in spouse who suffers personal injuries); see also Wood v. City of Topeka, 90 F. Supp.2d 1173, 1196 (D. Kan. 2000) (damages for loss of consortium recoverable only where plaintiff proves underlying cause of action). To the extent that the Court has sustained defendants' motion for summary judgment, plaintiff may not recover for loss of consortium damages. At this point, however, plaintiff's remaining claims of wanton conduct provide a basis for the loss of consortium claim. Defendants' motion for summary judgment as to plaintiff's claims for loss of consortium against Heartland Park and SFX Motor Sports is therefore overruled.

**IT IS THEREFORE ORDERED** that Defendants' Motion For Summary Judgment (Doc. #54) filed July 17, 2006 be and hereby is **SUSTAINED in part**. The Court **SUSTAINS** defendants' motion for summary judgment as to (1) Jayhawk Racing Properties, L.L.C., SFX Entertainment, Inc., d/b/a Clear Channel Entertainment, and Clear Channel Communications, Inc. on all plaintiff's claims, and (2) Heartland Park Raceway, L.L.C. and SFX Motor Sports, Inc., d/b/a Clear Channel Entertainment-Motor Sports on plaintiff's claims of ordinary negligence. Defendants' motion is otherwise **OVERRULED**.

Dated this 27th day of October, 2006 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge