# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

ARTHUR C. WAGNER, JR., INDIVIDUALLY,
and ARTHUR C. WAGNER, JR.,
FOR THE BENEFIT OF JEAN MARIE WAGNER,

          Plaintiff,

      vs.                                         Case No. 05-2336-JPO

SFX MOTOR SPORTS, INC., D/B/A
CLEAR CHANNEL ENTERTAINMENT-MOTOR SPORTS;
and HEARTLAND PARK RACEWAY, L.L.C.,

          Defendants.

## PLAINTIFF'S MOTION IN LIMINE

Plaintiff, Arthur C. Wagner moves the Court for an order in limine precluding defendants from presenting by argument, testimony, document or other evidence information in the following categories:

1. Any reference to the existence or contents of the release document relied upon by defendants in their motion for summary judgment.

2. Any reference to the claimed comparative fault of, or assumption of risk by, plaintiff Wagner.

3. Any attempt to elicit hearsay testimony concerning either the condition of the race track, the supposed absence of hazards to race participants, or the details of the accident.

4.      Any attempt to elicit expert opinions from defendant's employees or other witnesses who have never been identified as sources of expert testimony, as required by the Court's scheduling order.

Most of these issues are embraced within the rulings made in the related decisions relied upon by Judge Vratil in deciding the motion for summary judgment: ***Wolfgang v. Mid-American Motorsports, Inc.***, 898 F.Supp. 783 (D.Kan. 1995), ***Wolfgang v. Mid-American Motorsports, Inc.***, 914 F.Supp. 434 (D.Kan. 1996), and ***Wolfgang v. Mid-American Motorsports, Inc.***, 111 F.3d 1515 (10th Cir. 1997) hereafter collectively referred to as ***Wolfgang 1***, ***2***, and ***3*** respectively. Plaintiff believes the law remains the same as it was in the ***Wolfgang*** case, and the facts are not materially distinguishable, so the rulings should be the same in this case. The passage of time has not diminished the authority of ***Wolfgang*** as a correct statement of Kansas law. ***Wolfgang 1*** was cited with approval in the case of ***Klose v. Wood Valley Racket Club***, 267 Kan. 164, 168, 975 P.2d 1218 (1999).

**ISSUE 1: THE RELEASE DOCUMENT IS PREJUDICIALLY IRRELEVANT.**

Defendants list the release form as their first trial exhibit. All issues related to the pre-race release form have now been fully litigated, and no issue remains to submit to the jury concerning that document. Defendants sought and obtained an order of partial summary judgment on any claim of ordinary negligence based on the document, and summary judgment was denied on any remaining claims because Kansas law prohibits the enforcement of the agreement to bar claims for wanton conduct. Only wanton conduct claims remain in the case. Any reference to the release could serve only the illegitimate purpose of seeking to convince the trier of fact to employ the release as a

defense to liability for wanton conduct, a result prohibited by Kansas public policy and the partial summary judgment order.

The same evidentiary question was resolved in *Wolfgang 2*, where Judge Van Bebber determined that no reference to the release would be permitted at trial. His evidentiary ruling was affirmed by the 10th Circuit decision in *Wolfgang 3.* See 111F.3d at p. 1527. The same ruling should be made in this case.

**ISSUE 2: COMPARATIVE FAULT AND ASSUMPTION OF THE RISK ARE NOT AT ISSUE.**

Because the ordinary negligence count has been resolved by summary judgment, any supposed comparative fault and "assumption of risk" issues are now out of the case. Based on the deposition designations of defendants, it appears that they will seek to offer testimony from a series of witnesses concerning the cause of Mr. Wagner's crash and other matters related to comparative fault.

A claim of wanton conduct is not subject to a comparative fault defense under Kansas law. See *Wolfgang 3,* 111 F.3d at pp. 1527-1528:

> Defendants also claim that several pieces of evidence purporting to show the totality of the circumstances surrounding the crash were improperly excluded. They argue that the district court should have admitted evidence of (1) the Release; (2) Mr. Wolfgang's fault; (3) Mr. Wolfgang's failure to use a headnet; (4) the use of a plastic fuel filter; and (5) Mr. Wolfgang's disregard for the checkered flag which caused him to take an extra lap at high speed. **The district court excluded this evidence because it primarily concerned assumption of risk and comparative fault, issues not in the case.**
> Defendants argue that under State v. Gordon, 219 Kan. 643, 549 P.2d 886, 895 (1976), even though this evidence touched upon Mr. Wolfgang's own fault, it should have been admitted as one of the circumstances to be considered in determining the issue of causation. However, in State v. Betts, 214 Kan. 271, 519 P.2d 655 (1974), cited in Gordon, the Kansas Supreme Court held that **in a wantonness case, liability could only be negated if the plaintiff's actions were the sole cause of his injuries.** Id. 519 P.2d at 661. Thus, if the evidence does not support such a finding, the trial

>court is not required to instruct the jury to consider the plaintiff's actions. Id. In this case, **Defendants were already granted full use of the Release as a defense to Mr. Wolfgang's negligence claims, and it was irrelevant to the claim of wanton conduct.** Mr. Wolfgang admitted pretrial that the accident itself was his fault, but the issue in the case was not the cause of his accident, but the cause of his extensive burns. Thus, **evidence of Mr. Wolfgang's fault with regard to the crash was not only irrelevant, but also highly prejudicial.** Mr. Wolfgang's failure to use the headnet contributed to his head injuries, not his burns, and he admitted pretrial that he was responsible for his head injuries and was not seeking recovery for them. The use of a plastic fuel filter could not have been the sole cause of Mr. Wolfgang's injuries, particularly in light of the evidence of Defendant's inadequate fire protection capabilities. Finally, taking an extra lap at speed was irrelevant to whether Defendants adequately responded to the fire which resulted from that crash.

In its order denying defendants' motion to strike the testimony of plaintiff's expert, the Court has already ruled that no witness will be permitted to testify concerning issues of negligence or comparative fault:

>As earlier indicated, defendants have been granted summary judgment on plaintiff's ordinary negligence claim. **Thus, the court will not allow *any* witness, including but not limited to Dr. Darnell, to testify as to the issue of ordinary negligence.** Therefore, defendants' argument to strike Dr. Darnell's testimony due to his use of the term negligence is moot. (see document 81 at page 8)

This ruling should be reaffirmed at this time.

**ISSUE 3: REFERENCES TO HEARSAY ON ANY ISSUE ARE IMPROPER.**

Defendants' deposition designations include numerous references to hearsay and inferences based on hearsay. The jury will be asked to determine what was really done by the agents and employees of defendants, based on the testimony of persons who acted themselves or who personally observed the actions of others, not based on what any witness heard somebody else say had been done. Neither the deposition testimony nor live testimony of similar substance should be admitted. Hearsay rules apply to wanton conduct claims in the same manner as any other case. A witness should not be permitted to relate statements made by others unless a specific hearsay

exception is demonstrated to apply. No witness should be permitted to describe his or her own actions or thought processes as being based on hearsay facts provided by other persons.

Plaintiff is especially concerned that hearsay may be employed to attempt to evade the findings of uncontroverted fact already made in the memorandum decision denying the motion for summary judgment. Among the factual matters established as uncontroverted by the summary judgment decision are the following:

> On the day of the race, Heartland provided two staffed ambulances pursuant to the track rental agreement. The first ambulance arrived approximately five minutes after the accident, but the emergency personnel in that ambulance did not attempt to help plaintiff. It was not until the second ambulance arrived, approximately 12 minutes after the accident, that any emergency personnel began to render aid. The record contains no evidence that Heartland or SFX Motor Sports used the wrecker, flatbed truck or fire truck to respond to the crash site. (document 66 page 7)

> The first ambulance arrived approximately five minutes after the accident, but the emergency personnel did not attempt to help plaintiff. It was not until the second ambulance arrived, approximately 12 minutes after the accident, that any emergency personnel began to render aid. The record contains no evidence that the fire truck ever responded to the crash site. (document 66 page 16)

F.R.C.P. 56(d) and District Court Rule 56.1 require the trial to proceed on the basis of the uncontroverted fact findings made in the order denying summary judgment. Failure to offer evidence on a key issue raised in summary judgment briefs precludes any attempt at trial to contradict the factual findings that resulted from the summary judgment motion.

**ISSUE 4: NO EXPERT OPINION TESTIMONY FROM DEFENSE WITNESSES IS PROPER.**

Defendants have never identified any expert witnesses in accordance with the requirements of paragraph 2.h of the Scheduling Order. Deposition designations include a number of references to opinions concerning the hazards present at the track and the response of defendants to those hazards. According to the witness list filed by defendants, they now plan to offer what appears to

be expert opinion testimony from a number of witnesses who have never before been identified as experts, including but not limited to the following persons:

1. Witness #3, Kevin Abbott:

   "Further, Mr. Abbott is expected to testify regarding *his experience regarding motorcycle road racing in general and his experience with respect to other racetracks.* Further, Mr. Abbott will testify regarding his knowledge of corner worker responsibilities and duties. Further, Mr. Abbott will provide testimony regarding safety measures taken at the Heartland Park Topeka Racetrack, *and the general feasibility of safety measures in general.*"

2. Witness #4, Kevin Elliott:

   Mr. Elliott will provide testimony *regarding his knowledge of road racing and safety precautions regarding the same.* Further, Mr. Elliott will testify regarding his knowledge of the configuration of Heartland Park Topeka Racetrack on the day of Mr. Wagner's accident at issue. Further, Mr. Elliott will testify regarding the amount of run-off space at Turn 10. Further, Mr. Elliott will testify regarding the duties and responsibilities of corner workers. Further, Mr. Elliott will testify regarding the safety precautions that were put into place during the motorcycle race in which Mr. Wagner had his accident. *Further, Mr. Elliott will testify regarding the duties and responsibilities of other individuals that participated in some way with respect to the motorcycle race at issue.*

3. Witness #6, Gordon Spieckerman:

   Mr. Spieckerman will testify regarding his duties and responsibilities during the day of the motorcycle race at issue, the training he provided to the corner workers, the configuration of the Heartland Park Topeka racetrack, the run-off area at Turn 10, the safety precautions in place during the motorcycle race at issue, his personal knowledge regarding Mr. Wagner's accident, the response to Mr. Wagner's accident, and *his evaluation of the Heartland Park Topeka Racetrack* prior to the motorcycle race at issue.

4. Witness #10, Ed Ozment:

   The Defendants expect Ed Ozment to testify live at trial. Mr. Ozment will testify regarding his knowledge of the configuration of Heartland Park Topeka racetrack at the time of Mr. Wagner's motorcycle accident at issue. Further, Mr. Ozment will testify regarding his *inspection of the Heartland Park Topeka racetrack* prior to the motorcycle race at issue. *Further, Mr. Ozment will testify regarding his knowledge of other racetracks. Further, Mr. Ozment will testify regarding the safety precautions*

> *utilized at Heartland Park racetrack on the day of the accident and safety precautions taken at other racetracks.*

5.      Witness #20, Phil Sberna:

> "Mr. Sberna is expected to testify regarding his *experience with motorcycle racing and his knowledge of other racetracks*.

Defendants apparently seek to completely disregard their obligation to identify persons whose testimony is governed by F.R.E. 702, 703, and/or 704, and use expert opinions masquerading as "lay witness" opinions to establish their defenses.

Defendants have already asked the Court to exclude any opinion testimony that does not meet the test of F.R.E. 702, in their motion to strike the testimony of plaintiff's designated expert. The order denying that motion established that the design of the race track and the safety precautions to be taken are proper matters for expert testimony under F.R.E.702. None of the testimony concerning safety precautions and track design described in defendants' witness list and their deposition designations would meet the test of lay opinion admissibility under F.R.E.701. To the extent the conclusions of defendants' witnesses would fall outside the scope of F.R.E..702, the opinions revealed so far appear to be based primarily if not exclusively on hearsay rather than on the personal knowledge of the witness. To the extent the witnesses are using personal knowledge, that knowledge is specialized information governed by F.R.E. 702, not ordinary factual information governed by F.R.E. 701.

Lay opinions based on inadmissible hearsay are themselves clearly inadmissible. See ***United States v. Garcia***, 994 F.2d 1499, 1506-07 (10th Cir.1993); ***Gross v. Burggraf Const. Co.***, 53 F.3d 1531, 1544 (10th Cir.1995). If the opinions now offered by defense witnesses fall within the scope

of F.R.E. 702, then these witnesses should have been identified as potential expert witnesses pursuant to F.R.C.P. 26(a)(2).

        **FISHER, PATTERSON, SAYLER & SMITH, LLP**
        3550 S.W. 5th Street
        P. O. Box 949
        Topeka, Kansas 66601-0949
        (785) 232-7761/Office; (785) 232-6604/Fax
        E-Mail:  lpepperdine@fisherpatterson.com
                sfabert@fisherpatterson.com

        **s/Larry G. Pepperdine**
        Larry G. Pepperdine        #07490
        Steve R. Fabert        #10355

        Adam M. Crane  #15544
        CRANE LAW FIRM
        5100 W. 95th Street, Suite 200
        Prairie Village, Kansas  66207
        (913) 385-1777/Office
        E-mail:  admcrane@aol.com
        **Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

      I hereby certify that on July 16, 2007, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Paul M. Croker/Richmond M. Enochs
WALLACE, SAUNDERS, AUSTIN, BROWN & ENOCHS, CHTD.
10111 West 87th Street
P. O. Box 12290
Overland Park, Kansas  66282-2290
**Attorneys for Defendants**

I further certify that I caused the foregoing document and notice of electronic filing to be mailed by first-class mail to the following non-CM/ECF participants:  No one.

                                              **s/Larry G. Pepperdine**
LP692.23947                                         Larry G. Pepperdine